

**SIGNED this 21 day of October, 2008.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br>    BOBBY LEE CAMPBELL,<br><br>                  Debtor. | No. 07-51395<br>Chapter 7 |
| PORTER CAPITAL CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>BOBBY LEE CAMPBELL,<br><br>    Defendant. | Adv. Pro. No. 08-5001 |

## M E M O R A N D U M

APPEARANCES:

| | |
|---|---|
| Mark S. Dessauer, Esq.<br>Hunter, Smith & Davis, LLP<br>Post Office Box 3740<br>Kingsport, Tennessee 37664<br>*Attorney for Porter Capital Corporation* | Mary Foil Russell, Esq.<br>Hale, Lyle & Russell<br>Post Office Box 274<br>Bristol, Tennessee 37621-0274<br>*Attorney for Bobby Lee Campbell* |

**Marcia Phillips Parsons**, United States Bankruptcy Judge.  In this adversary proceeding, the plaintiff Porter Capital Corporation ("Porter") seeks a determination that the losses it suffered as a result of its accounts receivable financing for Capitol Armored Services, Inc. ("Capitol Armored") are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4) as to the debtor Bobby L. Campbell ("Debtor"), a shareholder, director, officer and employee of Capitol Armored, and guarantor of its obligations to Porter.  Presently before the court are the parties' cross-motions for summary judgment. For the reasons discussed below, Porter's motion will be denied and the Debtor's granted.  This is a core proceeding.  *See* 28 U.S.C. § 157(b)(2)(I).

I.

The Debtor filed for bankruptcy relief under chapter 7 on October 4, 2007.  Thereafter on January 4, 2008, Porter commenced the present adversary proceeding.  According to the allegations of the complaint, Porter's action is essentially premised on two theories.  The first is that the Debtor is responsible for Capitol Armored's fraud, embezzlement, and defalcation by a fiduciary because the Debtor personally directed or controlled Capitol Armored's actions.  The second contention is that the actions of Capitol Armored, although directed by others, may be imputed to the Debtor because of his guaranty of Capitol Armored's obligations to the Porter.

In the motion for summary judgment filed by the Debtor on September 12, 2008, the Debtor argues that the facts do not support Porter's first theory and that Porter is unable to recover as a matter of law with respect to the second. Porter's summary judgment motion[1] filed September 11, 2008, relates only to the second argument.  While the parties have agreed upon certain stipulations, the Debtor has also tendered his affidavit, which has not been refuted in any respect by Porter.  Accordingly, there is no dispute as to the following facts.

Capitol Armored is engaged in the business of providing transport and security services for financial institutions.[2]  On December 5, 2005, Porter and Capitol Armored entered into a Financing

---

[1] Porter's motion, as it recognizes, is in actuality a motion for partial summary judgment as to the issue of dischargeability only because the amount of its loss for which its seeks judgment has not yet been determined.

[2] After filing for chapter 11 relief, Capitol Armored obtained confirmation of its plan of
(continued...)

2

Agreement pursuant to which Porter provided accounts receivable financing to Capitol Armored. Under the agreement, Capitol Armored would send invoices to Porter and in turn, Porter would advance up to 80 percent of the invoices by wiring the funds to Capitol Armored and would notify Capitol Armored's account debtors that they should make payment directly to Porter.

Porter provided financing to Capitol Armored from December 5, 2005, through December 6, 2006. During this time period, Porter suffered certain losses as a consequence of one of the following three scenarios:

1. Capitol Armored presented fabricated invoices on which Porter made advances of monies or provided financing;

2. Capitol Armored presented invoices, which had not yet been performed, on which Porter advanced monies or provided financing; or

3. Capitol Armored received checks from account debtors in payment of invoices which Porter had previously financed and failed to turn such checks over to Porter, but instead deposited the checks in Capitol Armored's bank account.

At all times the Financing Agreement was in effect, the Debtor was a shareholder of Capitol Armored, a member of its board of directors, and its vice president. The Debtor was also employed by Capitol Armored, driving a route in Johnson City, Elizabethton and Erwin, Tennessee, and handling customer complaints. In his capacity as vice president, the Debtor signed the Financing Agreement along with the other officers of Capitol Armored. The Debtor also signed the Agreement as an individual guarantor.

The ownership of Capitol Armored was divided between the Debtor, who owned 25% of the shares, and Jeff Tankersley and his father-in-law, Bob Manis, who equally owned the remaining 75%. According to the Debtor, Capitol Armored "was essentially run as a family business by Mr. Tankersley and Mr. Manis." They "ran all aspects of the company, including all financial management." No shareholder or board meetings were held.

As set forth in his affidavit, the Debtor had no "role in the financial management of the company or in any factoring." While acknowledging that he signed the Financing Agreement, the Debtor states that he did not negotiate the agreement or review its terms. Regarding Capitol

---

[2](...continued)
reorganization on December 19, 2007.

3

Armored's borrowing under the Financing Agreement, the Debtor indicates that he never dealt with Porter or submitted any invoices or other documents to Porter, signed any schedules or documents itemizing invoices to Porter, or ever had any knowledge of actions taken by anyone at Capitol Armored regarding invoicing or securing financing from Porter. The Debtor also states that he "did not supervise or control any of the staff at Capitol who dealt with Porter or submitted invoices to Porter," did not have any "authority for hiring or firing of employees during the term of the Porter agreement," and "had no check-writing authorization during the term of the Porter agreement." Lastly, the Debtor states that he received only a salary from Capitol Armored during the time the Financing Agreement was in place and never received a dividend or any return on his investment in Capitol Armored or otherwise any proceeds from Porter.

II.

Federal Rule of Civil Procedure 56, as incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure, mandates the entry of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (c). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505 (1986). "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wily v. United States* (*In re Wily*), 20 F.3d 222, 224 (6th Cir. 1994). Denial of one party's summary judgment motion does not necessarily result in a corresponding conclusion that the opposite party is entitled to summary judgment. *See B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001).

The preponderance of the evidence standard applies to all exceptions from dischargeability of debts contained in 11 U.S.C. § 523(a). *See Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654 (1991). Exceptions to discharge are to be strictly construed against the creditor. *See Rembert v. AT&T Univ. Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).

4

III.

Under § 523(a)(2)(A) of the Bankruptcy Code, excepted from the discharge of an individual debtor are debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The Sixth Circuit Court of Appeals has held that in order for a debt to be nondischargeable under this provision, the creditor must prove: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *See In re Rembert*, 141 F.3d at 281.

Porter does not argue in its motion for summary judgment that the Debtor personally committed fraud. Rather, Porter maintains that the fraudulent activity of Capitol Armored, as set forth in the parties' stipulations, establish each of § 523(a)(2)'s elements of nondischargeability. According to Porter, Capitol Armored's fraud may be imputed to the Debtor because he guaranteed Capitol Armored's obligations to Porter under the Financing Agreement. Citing a line of cases holding that the fraud of a partner is imputed to an innocent partner for bankruptcy nondischargeability purposes, *see, e.g. Strang v. Bradner*, 114 U.S. 555, 5 S. Ct. 1038 (1885); *BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556 (6th Cir. 1992), Porter argues by analogy that "[t]here is no fundamental difference with respect to the ultimate legal relationship with the debt of a partnership for which the partners have joint and several liability and the debt of a corporation for which its shareholders have personally guaranteed and likewise have joint and several liability." Additionally, Porter maintains that "§ 523(a)(2)(A) is silent" as to whether fraud under this subsection can be imputed to another based on that individual's personal guaranty. In light of § 523(a)(2)(A)'s silence on this issue, Porter asserts that, "from an analytical standpoint," expansion of imputed nondischargeability liability to a personal guarantor is more logical than partnership imputed liability "because the liability is direct through a contractual obligation in the form of a guaranty, rather than arising indirectly or by conduit through [principles] of agency or partnership law."

Courts addressing the issue of vicarious liability under § 523(a)(2)(A) have uniformly

refused to extend the provision's fraud exception to fraud committed by someone other than the debtor, except in the narrow circumstance of partnership/agency liability. For example, in *Hoffend v. Villa (In re Villa)*, 261 F.3d 1148 (11th Cir. 2001), the Eleventh Circuit Court of Appeals was faced with the issue of whether the fraud of an employee could be imputed to his employer as a controlling person under § 20(a) of the Securities Exchange Act, so as to render the debt nondischargeable under § 523(a)(2)(A) in the employer's bankruptcy case. Finding that liability under § 20(a) is not equivalent to liability under the common law of agency because the former may impose liability on corporate officers and directors, and citing its obligation to strictly construe exceptions to discharge in order to give effect to the fresh start policy of the Bankruptcy Code, the court refused to impute fraud to the debtor, stating that any discharge exception for § 20(a) liability should come from Congress. *Id.* at 1154; *see also Owens v. Miller (In re Miller)*, 276 F.3d 424 (8th Cir. 2002) ("We agree with the Eleventh Circuit that *Strang* should not be extended beyond its basis in agency law to include the much broader sweep of § 20(a) liability. . . . Section 523 of the Bankruptcy Code addresses actual, traditional fraud, and we are not persuaded that it should be read in such a way as to encompass the nontraditional liability imposed under § 20(a).").

Similarly, in *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1995), the creditor argued that the fraud of a corporation in which the debtor was president and one-third shareholder, along with the fraud of the other two shareholders, should be imputed to the debtor for purposes of § 523(a)(2)(A). The Fifth Circuit Court of Appeals rejected this argument, observing that the debtor was not the agent of the corporation or of the other shareholders. *Id.* at 1297. The court stated that to hold the debtor liable for another's fraudulent acts, outside the partnership context, would be inconsistent with the general principle that "523(a)(2)(A) 'contemplates frauds involving moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient.'" *Id.* (quoting *Allison v. Roberts (In re Allison)*, 960 F. 2d 481, 483 (5th Cir. 1992)). Interestingly, in *RecoverEdge*, as in the instant case, the debtor had also guaranteed the debt of the corporation, although this fact was not argued as a basis for vicarious liability. *Id.* at 1287.

A case with facts similar to those herein is *Citizens Bank of Washington County v. Wright (In re Wright)*, 299 B.R. 648 (Bankr. M.D. Ga. 2003), where the debtor and another individual, Tharpe, were the only two shareholders, officers, and directors of a corporation that sold mobile

6

homes. The corporation entered into a floor-plan financing arrangement with a bank, which obligation was personally guaranteed by the debtor and Tharpe. The corporation subsequently sold homes out of trust; the debtor filed bankruptcy; and the bank sought to have the debt declared nondischargeable under § 523(a)(2)(A) based on the fraudulent misrepresentations of Tharpe. The bankruptcy court refused to impute Tharpe's fraud to the debtor, noting that it had not been established that Tharpe was an agent of the debtor, and citing *Villa* and *RecoverEdge's* limitation of vicarious liability for purposes of § 523(a)(2)(A) to the partnership and agency context. *Id.* at 657-58. *See also SecurAmerica v. White (In re White)*, No. 01-0847, 2003 WL 22871586, *4-5 (Bankr. W.D. Tenn. Oct. 28, 2003) (in § 523(a)(2)(A) action, court refused to impute fraud of corporation and of fellow shareholder and officer to debtor who had personally guaranteed the corporation's obligation).

Applying the guidance of these decisions to the present case, this court rejects the argument that liability as a guarantor is analogous to the liability of a partner. The Debtor guaranteed payment of Porter's debt to Capitol Armored. He did not agree to be an agent or partner of Capitol Armored such that he would be responsible for whatever act it committed in its relationship with Porter. *See, e.g.*, Tenn. Code Ann. § 61-1-301(1) ("Each partner is an agent of the partnership for the purpose of its business. . . ."); Tenn. Code Ann. § 61-1-306(a) ("Except as otherwise provided in subsections (b) through (g), all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law."). Principles of general corporate law shield corporate officers, directors and shareholder from personal liability for the torts of the corporation unless they personally directed the wrongful act or the corporate veil is pierced. *See Cash America Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 113 (B.A.P. 6th Cir. 2007). To impute liability for Capitol Armored's fraud to the Debtor would violate these general principles, and would extend vicarious liability beyond the traditional agency/partnership relationship, an extension the courts thus far have refused to undertake.

In this court's view, this refusal is well-grounded. The argument advanced by Porter for its extension in this case, that the Debtor contractually agreed to be liable for Capitol Armored's debts to Porter, is insufficient alone to render a debt nondischargeable, since the majority of debts discharged in bankruptcy are in all likelihood debts a debtor contractually agreed to repay. The question before this court is not whether the Debtor is otherwise liable to Porter for Capitol

Armored's alleged fraud, but whether this liability is excepted from discharge in bankruptcy under § 523(a)(2)(A). Decisions by the Sixth Circuit Court of Appeals construing the fraud exception suggest that it is limited to fraud committed by a debtor personally, other than in the context of partnership liability recognized in *Ledford*. For example, in *Semann v. Allied Supermarkets, Inc. (In re Allied Supermarkets, Inc.)*, 951 F.2d 718, 728 (6th Cir. 1991), addressing the predecessor to § 523(a)(2)(A) under the Bankruptcy Act, the Sixth Circuit noted that "for this section to bar discharge, the fraud must be of a 'type involving moral turpitude or intentional fraud.'" In *Rembert*, the court of appeals observed that "a finding that a debt is nondischargeable under 523(a)(2)(A) requires a showing of actual or positive fraud, not merely fraud implied by law." *In re Rembert*, 141 F.3d at 281. Also in the *Rembert* decision, the court held that to establish fraud under this section, a creditor must demonstrate that the debtor intended to deceive the creditor, with the proper inquiry being "whether the debtor *subjectively* intended to repay the debt." *Id.* at 281 (emphasis added). Imposition of vicarious liability, of course, would bypass this inquiry.

Mindful of the court of appeals' statements in this regard and guided by the principle that "exceptions to discharge are to be strictly construed against the creditor," *In re Rembert*, 141 F.3d at 281, this court declines to extend vicarious liability beyond the partnership context for purposes of nondischargeability of debt. Accordingly, Porter's motion for summary judgment premised on § 523(a)(2)(A) must be denied.

Turning now to the Debtor's motion for summary judgment on this issue, the Debtor asserts that judgment in his favor is appropriate because Porter will be unable to establish the necessary elements of fraud under § 523(a)(2)(A) as to the Debtor personally. The Debtor states in his affidavit that he "made no representations or statements to Porter at any time," and that "at no time did [he] take any action with intent to deceive any creditor, including Porter." Porter offers no evidence in rebuttal to contradict these statements, even though both address required elements of nondischargeability under § 523(a)(2)(A) as set forth in *Rembert*. Porter's failure in this regard is fatal to its § 523(a)(2)(A) claim.

> At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). However, if the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its initial burden by showing that there is an absence of evidence to support the

>   nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. When the moving party has carried forward this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. The non-moving party may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *Id.*; accord Fed. R. Civ. P. 56(e)(2).

*White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389-90 (6th Cir. 2008).

Moreover, there is no evidence that the Debtor's personally directed or participated in Capitol Armored's alleged wrongdoing. To the contrary, as set forth in his unrefuted affidavit, the Debtor played no role in the financial management of Capitol Armored. And, other than signing the Financing Agreement, he never dealt with Porter or submitted any invoices or other documents to Porter. The Debtor did not supervise or control Capitol Armored's employees who dealt with Porter, and he had no knowledge of any actions taken by anyone at Capitol Armored regarding invoicing or securing financing from Porter. Based on all of the foregoing, summary judgment in favor of the Debtor as to Porter's § 523(a)(2)(A) claim is appropriate.

IV.

Plaintiff's second basis for nondischargeability is § 523(a)(4), which provides in pertinent part that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny[.]  11 U.S.C. § 523(a)(4). Embezzlement under this section has been defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."  *Brady v. McCallister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996) (citations omitted). A prima facie case of embezzlement requires three things: (1) property owned by another is rightfully entrusted to the possession of a bankruptcy debtor; (2) the bankruptcy debtor appropriates such property to a use other than the use for which the property was entrusted to the bankruptcy debtor; and (3) the circumstances indicate fraud. *See WebMD Practice Servs. Inc. v. Sedlacek (In re Sedlacek)*, 327 B.R. 872, 880 (Bankr. E.D. Tenn. 2005); *see also In re Brady*, 101 F.3d at 1172-73.

Defalcation is defined as "encompassing embezzlement, the 'misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds." *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997) (citing *Capitol Indem. Corp. v. Interstate*

9

*Agency, Inc*. (*In re Interstate Agency, Inc.*), 760 F.2d 121 (6th Cir. 1985)).  In the Sixth Circuit, federal courts adopt a narrow interpretation of "fiduciary"; defalcation necessarily implies the existence of an express or technical trust relationship "arising from placement of a specific res in the hands of the debtor."  *In re Garver*, 116 F.3d at 180.

One of the stipulations by the parties is that Porter sustained losses when Capitol Armored received payment on invoices already financed by Porter but failed to turn over the paid funds to Porter in violation of the terms of the Financing Agreement.  According to Porter, this failure constitutes "fraud or defalcation in a fiduciary capacity" or embezzlement under § 523(a)(4).  As with respect to fraud under § 523(a)(2), Porter maintains that Capitol Armored's actions in this regard should be imputed to the Debtor for purposes of § 523(a)(4), citing the Sixth Circuit's decision in *Capitol Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121 (6th Cir. 1985).  Additionally, Porter contends that the Debtor was personally a fiduciary because in Exhibit G to the Financing Agreement the Debtor expressly agreed to hold the monies in trust for Porter.

Turning first to the imputation argument, the *Interstate Agency* decision involved a nondischargeability action under § 523(a)(4)'s Bankruptcy Act predecessor against Arthur Lilly, the president and largest shareholder of an insurance agency that had misappropriated insurance premiums paid to it on behalf of an insurance company.  The agreement between the agency and company expressly provided that the agency would hold the premiums in trust for the company, and under Michigan law, premium payments received by an insurance agency had the status of trust funds for the benefit of the insurance principal, i.e., Lilly.  The court of appeals concluded that the loss to the insurance company was nondischargeable in Lilly's bankruptcy case because it constituted a defalcation by a fiduciary.  *Id*. at 125-26.

Critical to the court's ruling was Lilly's personal culpability in directing the agency's misappropriation of funds, because under applicable Michigan law, "a corporate officer or agent is personally liable for torts committed by him even though he was acting for the benefit of the corporation," and even without piercing the corporate veil.  *Id.* at 125.  The court of appeals did state in its analysis that "Lilly should be imputed with knowledge and participation in Interstate's breach of fiduciary duty," *id.*, but the word "impute" does not appear to mean vicarious liability in this context since the court expressly found Lilly was "personally acting in a fiduciary capacity" and

10

"personally responsible for the defalcation of the funds in the trust." *Id.* at 126.  In this last regard, the court noted that there was "overwhelming evidence" that Lilly had "full knowledge and responsibility for the handling of Interstate's trust undertakings." *Id.* at 125.

In the instant case, by contrast, there is no evidence that the Debtor directed or participated in the alleged misappropriation by Capitol Armored.  Rather, as previously noted, the evidence is undisputed that the Debtor played no role in the financial management of Capitol Armored or in any decisions regarding Capitol Armored's invoices.  Accordingly, *Interstate Agency* provides no authority for the proposition that Capitol Armored's misappropriation of funds should be imputed to the Debtor.

As to the argument that the Debtor personally was a fiduciary under the Financing Agreement,[3] Exhibit G to the Financing Agreement entitled "Misdirected Payment," states in part as follows:

> The Company and Jeffrey S. Tankersley, Bobby L. Campbell and Bobby W. Manis ("CLIENT") agrees to the following:
> Pursuant to the Commercial Finance Agreement of this date, CLIENT agrees that Porter Capital Corporation ("PCC") and CLIENT shall use their joint best efforts to notify all customers/account debtors of CLIENT of the assignment by CLIENT to PCC of certain accounts, some payments may be sent directly to CLIENT which are the sole and exclusive property of PCC (i.e., payment on invoices financed by PCC).  In such circumstances, CLIENT promises not to negotiate said check or other forms of payment, but *to hold them in trust and safekeeping for the benefit of PCC* and to turn over to PCC the exact form of payment received.

(Emphasis added.)

This language does appear to create a express or technical trust, rendering the Debtor a fiduciary as to Capitol Armored for any funds received by him on its behalf.  However, there is no evidence in the record before the court that the Debtor personally received any funds on Porter's behalf.  To the contrary, the parties have stipulated that Capitol Armored received these funds and placed them in its bank account.  Similarly, the Debtor's unrefuted affidavit indicates that he did not

---

[3] Porter's memorandum also makes reference to Section 21 of the Financing Agreement.  However, that portion of the Financing Agreement does not mention the Debtor by name or inference but refers only to Capitol Armored, and therefore provides no support for the argument that the Debtor personally is a fiduciary.

11

receive any proceeds from Porter. *Cf. In re Interstate Agency, Inc.*, 760 F.2d at 126 (holding that the three necessary elements for establishing nondischargeability for defalcation by a fiduciary were present: "1) the property at issue possessed an express trust status; 2) Lilly was personally acting in a fiduciary capacity; and 3) Lilly was personally responsible for the defalcation of the funds in the trust"). Accordingly, Porter's motion for summary judgment as to § 523(a)(4) must fail.

For these same reasons, summary judgment in the Debtor's favor on this count of the complaint is appropriate. The Debtor's affidavit establishes that Porter will be unable to demonstrate either defalcation by a fiduciary or embezzlement. As to the former which requires the misappropriation or failure to properly account for trust funds held in a fiduciary capacity, the undisputed evidence before the court is that no trust funds ever came into the Debtor's possession, and he played no role whatsoever in any alleged misappropriation by Capitol Armored. With respect to the embezzlement claim, none of the three required elements are present in this case. Porter's property was not entrusted personally to the Debtor, and consequently, he did not appropriate such property to a use other that for which it was intended. Although the stipulations by the parties do indicate fraud by Capitol Armored, there is no evidence of fraud by the Debtor personally and the Debtor's unrefuted statement is that he took no action with the intent to deceive Porter. Lastly, the evidence is uncontradicted that the Debtor did not direct or participate in Capitol Armored's fraud such that he should be held accountable for Capitol Armored's actions in this regard.

V.

An order will be entered in accordance with the foregoing, denying Porter's motion for summary judgment as to the dischargeability of its claim under §§ 523(a)(2)(A) and (a)(4), and granting the Debtor's summary judgment motion.

# # #